## No. 4131

### Second Circuit

#### (Second Division)

---

**GASSIOTT v. SOUTHLAND PRODUCE CO., INC.**

---

(December 9, 1931. Opinion and Decree.)
(January 14, 1932. Rehearing Refused.)

---

Blanchard & Pyburn, of Shreveport, attorneys for plaintiff, appellee.

Jackson & Smith, of Shreveport, attorneys for defendant, appellant.

438

Argued before DREW, TALIAFERRO, and CULPEPPER, JJ.

CULPEPPER, J. This is a suit for personal injuries and property damage arising out of a collision between plaintiff's Buick automobile, which he was driving at the time, and defendant's half-ton Chevrolet truck, driven by a truck driver employee of defendant. The collision occurred at the intersection of Market and Lake streets in the city of Shreveport, on January 13, 1931.

It is alleged by the plaintiff that the collision, and resultant injuries and damages, were due entirely to the fault and negligence of defendant's said truck driver, Sam Henderson, and for which plaintiff claims damages in the sum of $250 for pain and suffering sustained by him, $250 for mental anguish and nervousness, $50 for doctor's bill incurred, and $413.75 as damages to his automobile.

Defendant in answer denies negligence on the part of its truck driver, and, in the alternative, pleads concurrent contributory negligence on the part of plaintiff as a bar to recovery. Defendant in reconvention alleges and demands damages in the sum of $60.40 caused to its truck in the collision, alleging that the collision was caused solely by the negligence of the plaintiff in suit.

On trial of the case, there was judgment in favor of plaintiff in the suit in the amount and sums, respectively, of $413.75, as damages to plaintiff's automobile, $50 for doctor's bill incurred, $125 for pain and suffering, and $125 for mental anguish and suffering, sustained by plaintiff. The demands in reconvention were rejected. Defendant, Southland Produce Company, Incorporated, alone has appealed.

Market street and Lake street intersect and cross each other at right angles. At said intersection, the city maintains and operates a traffic signal light device for the purpose of regulating traffic. This device is suspended over the center of the intersection and has three alternating colored signal lights for each approach to the intersection. The colors are green, which permits traffic to enter and pass over the intersection; amber, which indicates caution; and red, which is a signal to stop and wait until the green light appears. The city has an ordinance adopted and in force requiring the observance of these signals.

On the occasion of the collision, plaintiff was driving his car along Market street going southward, and Sam Henderson was driving defendant's truck along Lake street in a westerly direction, both approaching the intersection of the two streets. Plaintiff contends that when he entered the intersection, the green light was showing on Market street along which he was traveling, which gave him the right of way over the intersection, and at which time the red stop light was showing on the Lake street approach; that Henderson, disregarding said red light signal then showing on Lake street, and driving at a speed in excess of that permitted by city ordinance, and without warning to plaintiff, drove said truck into the street intersection immediately in front of plaintiff's on-coming car; that on seeing the truck was passing the red light and being unable to stop his car in time, he unavoidably ran into the truck. On the other hand, it is the contention of defendant that its truck entered the intersection on the green light and not the red light, as contended by plaintiff; and that plaintiff entered on the red light and not the green. Defendant also contends that

its truck entered the intersection before plaintiff did, and that, even if plaintiff entered on the green light (which is denied), it was plaintiff's duty to have stopped at the intersection when he saw the truck had already entered, and, having the last clear chance to avoid an accident, it became plaintiff's duty to stop.

The testimony in this case is conflicting, as is more or less the case involving all questions of fact. The trial judge resolved the testimony in plaintiff's favor, which, of course, must have great weight with this court.

Plaintiff is positive and emphatic that he entered the intersection on the green light and that defendant's truck entered it on Lake street while the red light was showing on that street. Four witnesses testifying for plaintiff were equally positive on this point. One of these witnesses, John Howatt, testified that he started walking across Lake street, while the red light was on, on his way to the Hunter Building then under construction on or near the corner of Lake and Market streets, and on the opposite side of Lake from plaintiff's approaching car. He was watching the light, knowing that he had started to cross on a red light, and when he had walked about ten feet, the light, which was on Market, changed to green, thus giving plaintiff a green light. Witness continued across Lake, stepped up on the sidewalk or curb, and spoke to the superintendent of the construction work, at which time the collision occurred. Witness testified that he had walked leisurely across the street, and that the distance he walked from his position at the time the green light came on was, he judged to be, thirty or forty feet. This could have given plaintiff ample time to have entered the intersection on the same green light and

to have proceeded until the collision occurred.

T. D. Grimes, a carpenter looking for work on the Hunter Building at the time, testified that he was standing on the south side of Lake street next to said building, and between thirty and thirty-five feet from point of collision, and was looking at the witness Howard as Howard came across the street, and was in plain view of the light. Grimes states that he noticed that Howard started across on the red light, and when he had gone eight or ten feet, Grimes noticed that the light had changed to green and Howard proceeded on across and he was about four or five feet from the sidewalk on the opposite side when the crash came, and Howard jumped to get out of the way. Grimes testified that the red light was on on Lake street at that time. He was positive that it was on. He was equally positive that plaintiff entered the intersection on the green light.

E. M. Dinkens, another one of plaintiff's witnesses, testified that he was working as switchman for the I. C. Railroad at the time, at the point where the railroad crosses Market street, a short distance north of the intersection of Market and Lake streets; that he saw plaintiff and whistled at him, wanting to talk to him as he crossed the railroad on his way toward the street intersection, but plaintiff, not hearing him, did not stop. Dinkens testifies that he continued to watch plaintiff as plaintiff proceeded on his way, being particularly attracted by the new car plaintiff was driving. Witness is positive that plaintiff had the green light at the intersection, because he was (quoting), "I was looking right at it." Asked which he was looking at, the car or the light, witness answered: "Well, at the

time, the time, the way it is up like that, I could see them both, all at the same time. The light is on a hill." Asked which he was paying most attention to, witness answered: "When the accident happened the light was green, yes, sir." He further states that just before the accident happened, "the lights turned caution."

Rex Patterson, another one of plaintiff's witnesses, testified that he was about two hundred yards from the point of the accident when it happened, and was traveling along Lake street approaching the intersection and saw the light on Lake street. He is positive that the light on that street was red at the time of the accident because (quoting):

"I saw a light. I know that the light was on red against me because I was driving slow waiting for the light to change before I speeded up my car to go across."

As against the testimony of plaintiff and his four witnesses, we have the testimony of Sam Henderson, who was driving defendant's truck, and three other witnesses. Henderson testified that he was on his way from defendant's place of business on Commerce street to Joseph Feducia's, going by way of Crockett to Spring and over Lake street; that when he got to Lake, the red light was on and he stopped. He later apparently corrects himself and says he stopped at Spring street instead of Lake because the light is red at Spring and Lake at the same time. He says that when the light turned to green on Spring, where he was stopped, he turned to his right and went down to Lake and continued to its intersection with Market, at which place he looked up and saw that the light was green on Lake and he proceeded on across.

Asked if he saw plaintiff's car, he says (quoting):

"Yes, sir, when I seen it I saw a little something coming real close to me. I didn't know what it was. I didn't pay attention to the car. I knowed I had the green light."

On cross-examination, Henderson again repeats that he was not paying any attention to plaintiff's car because he did not see it, but insists that he saw he had the green light.

Woodrow Tew, testifying for defendant, states that he was riding a bicycle along Market street going south toward the intersection when the collision occurred, and was just across the railroad crossing. He testified that he was looking right at them when the car and truck collided. He says plaintiff had just passed him and as plaintiff went on up the grade, the light was red in front of him and ran into the intersection on the red light. He was positive that the red light was on. He also says plaintiff was going at the rate of thirty-five or forty miles per hour, he guessed. He says the reason he watched plaintiff was because plaintiff was going so fast across the railroad track and wondered if he was going to "run the red light." He did not know how long the light had been red, but says that from where the railroad crosses Market, where plaintiff passed him, to the intersection, was about a block, a long block.

Lewis Gilmer, another witness for plaintiff, testified that he was standing on the corner of Lake and Market streets, near the Hunter Building, talking to the superintendent of the work, when he heard the crash, and that he looked and saw the truck rolling towards him and the superintendent; that after the crash and after

he had stepped back, he noticed the light and saw it as it changed from red to green on Market street. On cross-examination, this witness testified that it was when he started around the truck that he looked up at the light. Asked if he could state how long it was after the impact that he walked around the truck and then looked at the light, witness said he could not say how many seconds "because in the excitement that way" he could not say.

Willie Daniels, defendant's fourth and last witness, testified that he was working on the Hunter Building, standing up on top of a little shed at the corner of the sidewalk, at the time of the accident, and that he saw the truck as it came down the hill toward the intersection, and that the truck had the green light. Asked how long the green light had been on, he did not know, neither could he tell how far the truck was from the intersection when he noticed the light; but he states the green light continued on until the truck turned over, and the light changed right after that. This witness, so he says, was standing up on top of a shed right at the corner on the front, which must have been at or near the southwest corner of the intersection, and nothing but a light post to obstruct his view; yet he said he did not see plaintiff's car come into the intersection or make a turn.

Counsel for defendant contends that while, numerically, plaintiff had the advantage in witnesses, yet in quality the evidence offered by defendant was superior to that of plaintiff. After a careful analysis of the testimony of all the witnesses, both for plaintiff and defendant, we cannot say we agree with the able counsel in this particular. It occurs to us that there are as many, if not more, inconsistencies in the testimony of defendant's witnesses than in plaintiff's, taking all of their testimony as a whole.

Counsel also point out that plaintiff entered the intersection after the truck had entered, that plaintiff's car ran into the truck, and that the collision took place after the truck had passed the center of Market street and was leaving the intersection, all of which, so counsel contend, go to prove that plaintiff was at fault even if he did not enter on the green light. Plaintiff's explanation of just how this happened, we think, absolves him from blame. He testified that when he saw the truck was going to cross, he started turning down Lake street with the truck in order to keep from hitting it; that the driver of the truck made no effort to slow down or turn; and that as he (plaintiff) tried to turn down the street in an effort to miss the truck, his left front wheel caught the wheel of the truck. If this be true, and it was not disputed, plaintiff was evidently not at fault. He had the right of way as he entered the intersection, and as soon as he saw defendant's truck coming on across, he began to maneuver to avoid a collision, but was unable to do so. Under such circumstances, the doctrine of the last clear chance, we think, does not apply.

We have discussed the testimony at length in order to satisfy ourselves as to whether the lower court erred in its conclusions as to the facts. We cannot say that it did, and we therefore concur with the court in its findings.

It appears clear that the amounts awarded as damages have been fully proven, and have not been seriously disputed.

For the reasons assigned, the judgment appealed from is therefore affirmed.